IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
MARK GIRTLER,

                                                                              OPINION AND ORDER

                    Plaintiff,

                                                                               19-cv-358-bbc

     v.

BRADLEY FEDIE, DAMEON MCCLIMANS,
RICKY STILWELL, TIMOTHY LAXTON,
GARY BOUGHTON and MARK KARTMAN,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Mark Girtler, a prisoner at the Wisconsin Secure Program Facility, is proceeding on an Eighth Amendment claim that defendants Bradley Fedie, Dameon McClimans, Ricky Stilwell and Timothy Laxton failed to protect him from at least two attacks by other inmates, even though plaintiff allegedly told defendants about the risk of harm he faced. Defendants Gary Boughton and Mark Kartman were named as defendants for purposes of responding to plaintiff's earlier-filed motion for preliminary injunctive relief and awarding any necessary injunctive relief. (I have amended the caption to reflect defendants' full names.) Before the court are the parties' cross motions for summary judgment. Dkt. ##44, 52.

      Because there are material differences between plaintiff's version of events and defendants' version, I am denying plaintiff's motion for summary judgment. Defendants' motion for summary judgment will be denied and the case will proceed to trial with respect to plaintiff's claims against defendants Fedie, McClimans and Kartman. Although plaintiff was not granted leave to proceed on an Eighth Amendment claim against defendant

1

Kartman, I will allow him to amend his complaint to add the claim because there is no apparent prejudice to Kartman or the other defendants. Accepting plaintiff's version of events as true, a reasonable jury could find that defendants Fedie, McClimans and Kartman violated the Eighth Amendment. However, a reasonable jury would not conclude that defendants Stilwell and Laxton knew that plaintiff faced a serious risk of harm. Accordingly, defendants' motion for summary judgment will be granted with respect to defendants Stilwell and Laxton, who will be dismissed. Defendant Boughton also will be dismissed as a defendant.

From the parties' proposed findings of fact, I find the following facts to be undisputed unless otherwise noted.

## UNDISPUTED FACTS

Plaintiff Mark Girtler is incarcerated at the Wisconsin Secure Program Facility where all of the defendants are employed. Gary Boughton is the warden, Mark Kartman is the security director and Bradley Fedie, Dameon McClimans, Ricky Stilwell and Timothy Laxton are correctional officers.

On January 9, 2019, Laxton notified plaintiff that he would be moving from the D Unit to the C Unit at the direction of Unit Manager Kool. Plaintiff told Laxton that he did not "get along" with unidentified inmates and staff on the C Unit. Laxton was not aware of any special placement need preventing a move to the C Unit and explained that if plaintiff refused to move, Laxton would contact a supervisor, and plaintiff would likely be moved to

2

the restrictive housing unit. Later that day, while plaintiff was at recreation, defendant Stilwell went to plaintiff's cell to pack his property. When plaintiff returned to his cell, he complained about how Stilwell was packing his property. (Plaintiff says that he told Stilwell that he should not be moved to the C Unit because he had enemies there and his physical health and safety would be in danger. Plaintiff also says that Laxton overheard this conversation but still ordered plaintiff to pack his things or risk receiving a conduct report. Stilwell says that plaintiff did not tell him about having enemies on the C Unit, and Laxton denies overhearing or interrupting any conversation that plaintiff had with Stilwell.)

When he got to the C Unit, plaintiff told defendant McClimans that he had been threatened by inmate Banister, but he admitted that he had no special placement need to be separated from Banister. McClimans did not have the authority to move plaintiff. He told plaintiff to talk to the unit supervisor or defendant Fedie, a lieutenant. Plaintiff spoke to Fedie that evening. (The parties dispute what was said during this discussion. Plaintiff says that he told Fedie that Banister had threatened him in the past and that he needed to be moved to a different unit because he feared for his safety, but Fedie refused to take any action, telling him only to file a special placement need request. Fedie says that plaintiff told him that he did not "get along" with Banister, not that Banister had threatened him. Fedie says that he explained that moving inmates whenever they do not get along would be administratively impossible because inmates would be moving continuously.) Plaintiff did not talk with the C and D unit managers about the move at that time.

3

The next morning, on January 10, 2019, Fedie spoke with Administrative Captain Gardner about plaintiff's request to move. During the conversation, Fedie learned that Gardner was not aware of any conflict, plaintiff had not submitted a special placement need request to be separated from Banister and it was plaintiff who had made threatening comments to Banister in the past. (Although Gardner's statements are hearsay and inadmissible to prove the truth of the matters asserted by Gardner, they are admissible to show the effect that they had on Fedie. United States v. Inglese, 282 F.3d 528, 538 (7th Cir. 2002) (statement is not hearsay if it is offered to show effect it had on listener).)

Also on January 10, Banister came to plaintiff's cell and told plaintiff , "You better pay me some money or else [I'm] gonna fuck you up." (Plaintiff says that he reported this incident to defendant McClimans who said that he was busy and would not move plaintiff. McClimans says that he does not recall having this conversation.) The same day, plaintiff told Fedie that he needed to be moved to another unit, but Fedie responded that he would not move plaintiff and told plaintiff to file a special placement need request. (Plaintiff says that he told Fedie that Banister had threatened him and that McClimans refused to move him. Fedie says that plaintiff stated that he did not get along with Banister and that they would eventually get into a fight.)

On the morning of January 12, 2019, Banister attacked plaintiff while he was standing in the breakfast serving line. Banister struck plaintiff in the face, chest and shoulder with his fist, but the attack was quickly broken up. (Defendants say that neither inmate had any cuts or abrasions or requested medical attention. Plaintiff avers that he had

cuts to his face and suffered pain in his neck and chest. Dkt. #1 at ¶24. Plaintiff also submitted a copy of an interview and information request in which he sought medical treatment for nose bleeds, elbow pain and headaches that he said resulted from the attack. Dkt. #1-4.) Plaintiff was taken to temporary lockup in the A Unit pending investigation for possible disciplinary charges. On January 16, 2019, he was released to the D Unit.

On or around January 29, 2019, plaintiff filed a special placement need request, asking to be moved to another prison because Banister was trying to extort him directly and through alleged fellow gang members. Lieutenant Taylor (not a defendant) conducted an investigation. Based on the results of that investigation, Kartman denied plaintiff's request for a special placement on February 6, 2019. (Defendants did not submit a copy of the investigation report or an affidavit from Taylor. Rather, defendant Kartman avers that his review of the report revealed that Taylor had reviewed the incident reports and interviewed staff and confidential informants, noted that plaintiff refused to give the names of the other persons allegedly extorting him and reported that plaintiff may have owed Banister money for prescription pills, which did not warrant a special placement need. Although Taylor's findings are hearsay, they are admissible for the limited purpose of showing the effect they had on Kartman.) Plaintiff challenged Kartman's decision in an inmate complaint, which defendant Boughton dismissed on March 8, 2019.

Meanwhile, on January 30, 2019, plaintiff was placed in restrictive housing in the A Unit for unrelated reasons and remained there until March 19, 2019, when he was returned to the C Unit. At that time, Banister was in the D Unit. (In a May 26, 2019 motion for

5

preliminary injunctive relief, plaintiff made a sworn statement that he was attacked by members of Banister's gang on March 4, 2019 and placed in segregation pending investigation of the assault. Dkt. #8 at 2. However, in his summary judgment filings, plaintiff refers only to a second attack that occurred on May 4, 2019. In addition, plaintiff's bed assignment record shows that he was housed in segregation on the A Unit between January 30 and March 19, 2019, and then housed on the C Unit from March 19 to May 4, 2019. On May 4, he was moved back to segregation on the A Unit. Dkt. #15-4. Therefore, it appears that the March 4 attack to which plaintiff referred actually occurred on May 4.)

Plaintiff continued to request to be moved. (Although plaintiff does not say when he made these requests, documents attached to his complaint show that he submitted several information and interview requests on this subject in March 2019. Dkt. #1, exh. ##4, 6-8.) (Defendants say that on at least three occasions, plaintiff refused to provide the names of those allegedly threatening him when asked to do so. Plaintiff says that he did not know the specific identities of these individuals, some of whom only screamed at him behind closed doors. He says that he did provide the name of the gang and that on December 13, 2019, he identified inmate Smith as someone who was threatening him.)

On May 4, 2019, inmate Brown, who is a member of the Black Stone Gang, physically attacked plaintiff in the C Unit. Defendants' Wisconsin Integrated Corrections System database identifies Brown as a gang member. Plaintiff filed an inmate complaint (WSPF-2019-8656) about the May 4, 2019 attack, but that inmate complaint was dismissed, and plaintiff never filed an appeal.

OPINION

A. Exhaustion

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process," Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing the initial grievance, Cannon v. Washington, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, Burrell v. Powers, 431 F.3d 282, 284-85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025.

In Wisconsin, inmates must follow the inmate complaint review process set forth in the Wisconsin Administrative Code Ch. DOC 310. Wis. Admin. Code § DOC 310.05. That process requires an inmate complaint to be filed within 14 calendar days after the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.07(2). If the inmate complaint examiner rejects the complaint, the inmate has 10 days to file an appeal with the reviewing authority, whose decision is final. Wis. Admin. Code § DOC 310.10(10). If the inmate is dissatisfied with the reviewing authority decision, he may file an appeal to the corrections complaint examiner within 14 days, and the corrections complaint examiner will recommend a decision to the secretary. Wis. Admin. Code §§ DOC 310.09(1) and 310.12.

7

A failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proved by the defendants. Davis v. Mason, 881 F.3d 982, 985 (7th Cir. 2018). Defendants did not file an early motion for summary judgment based on § 1997e(a) by the deadline for doing so. A recent change to this court's pretrial conference orders states that "[a]bsent a granted motion for an extension, failure to file an exhaustion motion by the deadline set above shall constitute a waiver of this defense." However, because this change was not included in the pretrial conference order in this case, I will not find that defendants waived their exhaustion defense.

Defendants argue that even though plaintiff filed an inmate complaint concerning the May 4, 2019 attack, he did not exhaust his failure-to-protect claim based on that incident because he never appealed the dismissal of that complaint. However, defendants agree that plaintiff exhausted his claims with respect to the January 12, 2019 attack by filing an inmate complaint (no. WSPF-2019-892) in which he stated that: (1) defendants Stilwell, Laxton, Fedie and McClimans moved him to the C Unit even though he had enemies on the C Unit; and (2) he told Fedie and McClimans that he had enemies on the C Unit and that Banister threatened to beat him up on January 10. Dkt. #14-4 at 6. It is also undisputed that plaintiff filed an inmate complaint related to the denial of his special placement need request. Although these inmate complaints predate the May 4, 2019 incident, they describe the risk of harm that Banister and his fellow gang members posed to plaintiff and the failure of prison staff to take reasonable measures to protect plaintiff. The Court of Appeals for the Seventh Circuit has held that "[i]n order to exhaust their remedies, prisoners need not file

8

multiple, successive grievances raising the same issue (such as prison conditions or policies) if the objectionable condition is continuing." Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013). Once plaintiff had fully exhausted one inmate complaint regarding the threat posed by Banister and his fellow gang members, he was not required to submit a new complaint each time prison staff failed to address the same problem. Therefore, I find that plaintiff has exhausted his administrative remedies as to his claim that defendants failed to protect him from the May 4, 2019 attack and will deny defendants' motion for summary judgment on this ground.

In a footnote to their exhaustion argument, defendants ask me to hold a hearing on the issue of exhaustion pursuant to Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008), if I decline to consider their exhaustion defense and deny summary judgment on the merits. However, I have considered defendants' defense and find that there are no factual disputes regarding the exhaustion of plaintiff's claims that would require an evidentiary hearing. Therefore, defendants' request for a Pavey hearing is denied.

### B. Eighth Amendment Claim

1. Legal standard

Under the Eighth Amendment, prison officials must "take reasonable measures to guarantee the safety of . . . inmates," including protecting them "from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (internal citations omitted). See also LaBrec v. Walker, 948 F.3d 836, 841 (7th Cir. 2020) (citing same). To

establish an Eighth Amendment violation, an inmate must show that a defendant was deliberately indifferent to "an excessive risk to inmate health or safety." Sinn v. Lemmon, 911 F.3d 412, 419 (7th Cir. 2018) (quoting Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir. 2015)). "This includes two components: (1) 'the harm to which the prisoner was exposed must be an objectively serious one;' and (2) judged subjectively, the prison official 'must have actual, and not merely constructive, knowledge of the risk.'" Id. However, as defendants note, courts give "a high degree of deference to the discretion of prison administration to 'adopt policies and practices to maintain the safety and security of this country's penitentiaries.'" Board v. Farnham, 394 F.3d 469, 477 (7th Cir. 2005) (citing Bell v. Wolfish, 441 U.S. 520, 548 (1979); United States v. Tokash, 282 F.3d 962, 970 (7th Cir. 2002)). See also Holleman v. Zatecky, 951 F.3d 873, 880 (7th Cir. 2020) (Courts "are not super-wardens who sit to critique the efficacy or wisdom of prison management choices.").

Defendants challenge plaintiff's failure-to-protect claims on the grounds that the January 12, 2019 attack did not qualify as a significant risk of harm, defendants did not have sufficient and specific knowledge about the harm that plaintiff allegedly faced, defendants did not act unreasonably in response to plaintiff's reports and defendants are entitled to qualified immunity. I address each argument separately below.

2. Significant risk of harm

In a brief argument, defendants contend that the January 12, 2019 incident does not rise to the level of a significant risk of harm because plaintiff did not suffer any noticeable

injuries, did not receive any medical treatment and had the option of avoiding the attack by disobeying Laxton, who threatened to place plaintiff in the restrictive housing unit if plaintiff continued to refuse to pack his things. I am not persuaded by any of defendants' arguments.

As an initial matter, it is unreasonable to hold plaintiff responsible for his own protection and safety by expecting him to disobey orders and incur punishment in order to avoid interacting with an allegedly dangerous inmate. Gevas, 798 F.3d at 485 ("Expecting a prisoner to defy an order in pursuit of his own safety runs counter to the essential nature of incarceration as well as to cases emphasizing the need for order and discipline in the prison environment."). "[I]t is defendants who have the duty to protect a prisoner once they become aware he is in danger of assault by another prisoner." Id. at 484.

In support of their argument that plaintiff did not face a significant risk of harm because he did not suffer any cognizable physical injuries, defendants cite Lord v. Beahm, 952 F.3d 902, 904-05 (7th Cir. 2020), in which an inmate self inflicted only minor scratches requiring minimal first aid treatment and sued prison officials for failing to protect him from a significant risk of self harm. In that case, the court of appeals found that Lord did not meet his burden on summary judgment because he did not present any evidence of a physical or psychological injury, which led the court to conclude that Lord's "case presents a clear instance of an insincere suicide threat from an inmate wanting nothing more than attention." Id.

This case poses a different scenario. It is undisputed that Banister attacked plaintiff in the breakfast serving line, striking him in the face, chest and shoulder with his fist. In

11

addition, plaintiff was attacked again on May 4, 2019 by another inmate, who is allegedly associated with Banister. Although defendants disagree, plaintiff has presented a sworn statement and an interview and information request to health services in which he says that he had cuts on his face, was in pain and had headaches for which he was seeking medical treatment. The Court of Appeals for the Seventh Circuit has held that "a beating suffered at the hands of a fellow detainee . . . clearly constitutes serious harm, as '[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.'" Brown v. Budz, 398 F.3d 904, 910-11 (7th Cir. 2005) (quoting Farmer, 511 U.S. at 834). See also Thompson v. Christenson, 2016 WL 5939736, at *5 (W.D. Wis. Oct. 12, 2016) (noting same). Because a reasonable jury could conclude from plaintiff's version of events that he faced a significant risk of harm from other inmates, defendants are not entitled to summary judgment on this ground.

3. Knowledge and response to risk of harm

To show that a prison official had knowledge of a substantial risk to an inmate's safety in cases in which the inmate complains of threats from another inmate, the inmate must show that he complained about specific threats—vague statements about "having problems" or "needing to be removed" from a cell block are not sufficient. Grieveson v. Anderson, 538 F.3d 763, 776 (7th Cir. 2008) (citing Butera v. Cottey, 285 F.3d 601, 606-07 (7th Cir. 2002)). See also Gevas, 798 F.3d at 480-81 ("Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference

that a prison official had actual knowledge that the prisoner was in danger."). For example, in Grieveson, the inmate told prison officials only that he had been assaulted, was afraid and wanted to be moved; he did not tell staff "who assaulted him, why he had been assaulted (allegedly because of his 'snitch' label), or whether he continued to feel threatened by the assaulting individuals." Grieveson, 538 F.3d at 776. On the other hand, in Gevas, plaintiff's allegations that he had told defendants that his cellmate was threatening to stab him were sufficient to create genuine issue of material fact because the plaintiff had identified a "specific, credible, and imminent risk of serious harm." Gevas, 798 F.3d at 481-82. Failure to take reasonable responsive actions in the face of subjective awareness of a serious risk to plaintiff amounts to deliberate indifference. LaBrec, 948 F.3d at 847; Sinn, 911 F.3d at 422.

In this case, the parties have presented different accounts of the discussions that took place between plaintiff and each of the defendants. As discussed below, accepting plaintiff's version of events as true (as I must do for purposes of deciding defendants' motion for summary judgment), a reasonable jury could conclude that defendants Fedie, McClimans and Kartman knew that Banister and his fellow gang members posed a substantial risk to plaintiff's safety and that they failed to take reasonable measures to respond to that threat. However, even accepting plaintiff's version of events as true, a reasonable jury would not conclude that plaintiff put defendants Stilwell and Laxton on notice that he faced a specific and imminent risk of serious harm on the C Unit. I address plaintiff's claims against each defendant separately below.

a. Defendants Stilwell and Laxton

Plaintiff has adduced evidence, which defendants dispute, that defendant Laxton overheard him tell defendant Stilwell that he should not be moved to the C Unit because he had "enemies" on that unit who posed a danger to his health and safety. It also is undisputed that plaintiff told Laxton that he did not "get along" with unidentified inmates and staff on the C Unit. However, even if these interactions occurred, a reasonable jury would not conclude from plaintiff's vague statements about having enemies or being in danger that Stilwell and Laxton had actual knowledge that he faced a specific threat from Banister or his fellow gang members. More importantl plaintiff seems to have abandoned his claims against Stilwell and Laxton because he did not address defendants' arguments with respect to those defendants in responding to their motion for summary judgment. For these reasons, I find that defendants Stilwell and Laxton are entitled to summary judgment with respect to plaintiff's claims against them.

b. Defendant McClimans

The facts surrounding plaintiff's conversations with defendant McClimans are disputed, but plaintiff avers that on January 9, 2019 and again on January 10, he told McClimans he had been threatened by Banister. Plaintiff's version of events is sufficient to raise a genuine issue of fact as to defendant McClimans's knowledge that Banister posed a significant risk to plaintiff's safety.

Defendants argue that McClimans cannot be held liable because he did not have the authority to move plaintiff and told plaintiff on January 9, 2019, that he needed to talk with the unit supervisor or defendant Fedie, which plaintiff did. However, even if McClimans acted reasonably in response to plaintiff's initial reports of a threat on January 9, 2019, the parties dispute how McClimans responded after learning about the second and more imminent threat made by Banister on January 10, 2019. According to plaintiff, McClimans said "I'm busy" and refused to move plaintiff. McClimans says that he does not recall the conversation. Although it is a close call, a reasonable jury could conclude that McClimans "failed to take the minimal, reasonable action of inquiring further and investigating the situation." LaBrec, 948 F.3d at 847 (finding same). See also Sinn, 911 F.3d at 422 (subjective knowledge of danger necessitates that the prison official take reasonable responsive actions). Accordingly, defendants' motion for summary judgment with respect to plaintiff's claims against McClimans will be denied.

c. Defendant Fedie

It is undisputed that plaintiff spoke to Fedie on the evening of January 9, 2019. Under plaintiff's version of the events, plaintiff told Fedie that Banister had threatened him in the past and that he needed to be moved to a different unit because he feared for his safety. According to plaintiff, Fedie refused to take any action, telling him only to file a special placement need request. In addition, it is undisputed that on the morning of January 10, 2019, Fedie spoke with Captain Gardner about plaintiff's request to move but concluded

from that conversation that no action needed to be taken. The parties dispute whether plaintiff told Fedie about the additional threat that Banister made on January 10, 2019 and asked to be moved to another unit. A reasonable jury could conclude from plaintiff's version of the events that Fedie was aware of a serious risk of harm to plaintiff.

Although it is undisputed that Fedie took some action by speaking with Gardner and telling plaintiff to file a request for a special placement need, which plaintiff did not do until January 29, 2019, defendants have failed to present admissible evidence showing that speaking with Gardner or filing a special placement need request were the only remedial measures available to Fedie. Defendants argue that the prison's use of the special placement need procedure to verify alleged threats before moving inmates is entitled to great deference, but they have failed to present any admissible evidence about what that procedure is, when it is used and whether it is the only means of moving an inmate who reports a threat to his safety. It is also not possible to determine with any certainty whether Fedie's discussion with Gardner amounted to a reasonable investigation of the threat against plaintiff because defendants have failed to present sufficient, admissible evidence about Gardner's role and responsibilities and Fedie's discussion with him. (Fedie's description of Gardner's statements is inadmissible to show the truth of the matters asserted by Gardner.) Accordingly, defendants' motion for summary judgment with respect to plaintiff's claims against Fedie will be denied.

d. Defendant Kartman

Plaintiff was not granted leave to proceed on an Eighth Amendment deliberate indifference claim against defendant Kartman, but both parties briefed the merits of such a claim in their motions for summary judgment. In their brief in support of summary judgment, defendants argue that Kartman reasonably responded to plaintiff's request for a special placement need request. Dkt. #45 at 12. Defendants also responded to plaintiff's motion for summary judgment with respect to plaintiff's deliberate indifference allegations against Kartman. Dkt. #62 at 3. Because there is no apparent prejudice to Kartman or the other defendants, I will allow plaintiff to amend his complaint to add a failure protect claim against Kartman. Fed. R. Civ. P. 15(a)(2) (party may amend its pleading with opposing party's written consent or court's leave and court should "freely give leave when justice so requires").

It is undisputed that plaintiff made defendant Kartman aware of the alleged threat to his safety by submitting a special placement need request and that Kartman denied that request. Defendants contend that Kartman's denial was reasonable because he relied on Taylor's investigation in concluding there was no credible threat to plaintiff. However, defendants have failed to present any admissible evidence regarding the contents of the investigation. Although they also argue that Kartman exercised "his professional judgment as a security professional" and his decision is entitled to "significant deference," they have failed to present any evidence in support of this general assertion. Because there are insufficient facts regarding the information presented to Kartman and his exercise of

17

professional judgment, it is possible that a reasonable jury could conclude that he did not act reasonably under the circumstances. Accordingly, defendants' motion for summary judgment with respect to plaintiff's claims against Kartman will be denied.

4. Qualified immunity

Defendants argue that they are entitled to qualified immunity, which "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A right is "clearly established" when a reasonable official would know that his "conduct was unlawful in the situation he confronted." Hernandez v. Cook County Sheriff's Office, 634 F.3d 906, 915 (7th Cir. 2011) (citations omitted). In particular, defendants contend that plaintiff cannot point to legal precedent clearly establishing that a correctional officer violates the Eighth Amendment when he refuses to move a prisoner based on "uncorroborated, self-reported claims" of a threat. However, as discussed above, there are disputed issues of material fact over whether plaintiff conveyed more than a general or vague concern about his safety and whether defendants had actual knowledge that he was in danger.

Plaintiff's version of events fits within existing precedent holding that a plaintiff must identify a "specific, credible, and imminent risk of serious harm." Gevas, 798 F.3d at 481-82. The Court of Appeals for the Seventh Circuit has made clear that prison officials "have

the duty to protect a prisoner once they become aware he is in danger of assault by another prisoner, and this is a now well-settled aspect of Eighth Amendment jurisprudence." Id. at 484. Accordingly, defendants' motion for summary judgment with respect to qualified immunity will be denied. This case will proceed to trial on plaintiff's failure to protect claims against defendants Fedie, McClimans and Kartman.

ORDER

IT IS ORDERED that

1. Plaintiff Mark Girtler's complaint is AMENDED to add a claim that defendant Mark Kartman failed to protect plaintiff from attacks by another inmate and other inmates in the same gang, in violation the Eighth Amendment.

2. Plaintiff's motion for summary judgment, dkt. #52, is DENIED.

3. Defendants' motion for summary judgment, dkt. #44, is DENIED as to plaintiff's claims against defendants Bradley Fedie, Dameon McClimans and Mark Kartman. The motion is GRANTED as to plaintiff's claims against defendants Ricky Stilwell and Timothy Laxton, who will be DISMISSED as defendants.

4. Defendant Boughton is DISMISSED.

5. Plaintiff's case will proceed to trial with respect to his failure to protect claims

against defendants Fedie, McClimans and Kartman.

Entered this 28th day of July, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

20